RTF:CSK
F.# 2002R00043

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ANDREW CATAPANO,
JOHN MIKUSZEWSKI,
JOHN RUGGIERO and
ALEXANDER URBAN,

             Defendants.

- - - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 05-229 (SJ)(S-1)
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 982, 1341,
1346, 1956(h), 2 and
3551 et seq.; T. 21,
U.S.C., §§ 853(p); T.
26, U.S.C., §§ 7206(1)
and 7206(2); T. 28,
U.S.C., § 2461(c);
T. 29, U.S.C., §§
186(a)(2) and 186(d)(2))

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

    At all times relevant to this Superseding Indictment,
unless otherwise indicated:

I.   <u>The Defendants and Their Companies</u>

    1.  A.F.C. Enterprises, Inc. ("AFC") was a general
contractor whose headquarters were located at 88-43 76th Avenue,
Glendale, New York.  AFC's primary business involved working with
several New York City ("NYC") agencies to build public works,
namely, sewers, public schools, pumping stations, highways and
bridges.  A number of AFC's public works contracts with NYC were
subsidized by federal funds.  The defendant ANDREW CATAPANO was
the 100% shareholder and president of AFC.

2.   Rosewood Contracting Corp. ("Rosewood") was a general contractor whose headquarters were also located at 88-43 76th Avenue, Glendale, New York.   Rosewood also shared the same telephone number as AFC.   Like AFC, Rosewood's primary business involved working with several NYC agencies to build public works projects.   The sister of the defendant ANDREW CATAPANO was the 100% shareholder and president of Rosewood.

3.   AFC and Rosewood sometimes performed public works contracts for NYC with other corporations and partnerships to which they were contractually related (collectively "the Related Companies").   AFC and Rosewood sometimes concealed from NYC their contractual relationships with the Related Companies.   JPM Contracting Corp. ("JPM") was one of the Related Companies.

4.   The defendant JOHN MIKUSZEWSKI was a consultant for AFC and Rosewood, acting as the general manager and superintendent supervising day-to-day construction by AFC and Rosewood.

5.   Alpert Contracting, Corp. ("Alpert Contracting") was a real estate holding and construction consulting company operated by the defendant JOHN MIKUSZEWSKI.   MIKUSZEWSKI was the 49% shareholder of Alpert Contracting and Jane Doe, a person whose identity is known to the grand jury, was the 51% shareholder of Alpert Contracting.

6.   The defendant JOHN RUGGIERO was a vice-president of AFC and was responsible for coordinating the work of subcontractors on public works contracts awarded to AFC and Rosewood by NYC.

7.   The defendant ALEXANDER URBAN was an employee of Con Edison, a public utility company that provides electrical service in the New York City area.

## II.   The Labor Union and the Collective Bargaining Agreements

8.   The International Union of Operating Engineers (the "Union") was a labor organization that represented, sought to represent and would admit to membership the employees of companies who worked as heavy equipment operators, mechanics and surveyors in the construction industry.  Locals 14-14B of the Union ("Local 14") and Locals 15, 15A, 15B, 15C and 15D of the Union ("Local 15") represented operating engineers who performed work at various construction sites in the NYC area.  Locals 14 and 15, on behalf of their members, entered into labor agreements and collective bargaining agreements with employers who employed members of Locals 14 and 15.  These agreements obligated the employers to pay certain salaries and fringe benefits and to provide other conditions of employment to members of Locals 14 and 15.  Business agents were employees and officers of Locals 14 and 15 who were elected by the members of those Locals.  Their

duties included acting on behalf of and in the name of Locals 14
and 15 to represent the members by, among other things,
negotiating labor agreements and collective bargaining
agreements, ensuring that employers complied with their
obligations under those agreements, and initiating grievance and
arbitration procedures by members against employers.

9.  AFC, Rosewood and the Related Companies had
collective bargaining agreements with Locals 14 and 15.  AFC,
Rosewood and the Related Companies had contractual agreements and
business arrangements with various construction subcontractors
that had collective bargaining agreements with labor
organizations, including Locals 14 and 15.

III.   Bribery of Local 14 and Local 15 Business Agents

10.  The defendants ANDREW CATAPANO and JOHN
MIKUSZEWSKI, together with others, paid bribes to business agents
of Locals 14 and 15 of the Union in order to permit AFC, Rosewood
and the Related Companies, in connection with public works
contracts they performed for NYC, to circumvent the requirements
of the collective bargaining agreements.  Between January 1990
and December 2001, CATAPANO and MIKUSZEWSKI paid approximately
$1,000,000.00 in bribes to business agents of Locals 14 and 15.
In exchange for these payments, the business agents agreed not to
enforce a number of the provisions of the collective bargaining

agreements with AFC, Rosewood and the Related Companies.  These provisions included, but were not limited to, the provisions mandating the number of members of Locals 14 and 15 that AFC, Rosewood and the Related Companies were required to hire and pay salaries and benefits to on public works contracts.  Thus, in exchange for the bribes, the business agents allowed AFC, Rosewood and the Related Companies to hire and pay fewer members of Locals 14 and 15 than the collective bargaining agreements required these companies to hire and pay ("Savings from Bribing Business Agents of Locals 14 and 15").  The business agents also allowed the defendants to dictate the selection and assignment of members of Locals 14 and 15 on construction projects involving AFC, Rosewood and the Related Companies.

IV.   The Public Utility Companies

        11.   Certain public works contracts performed by AFC, Rosewood and the Related Companies for NYC required the relocation of utility lines owned by various public utility companies (the "Utility Companies").  NYC, in exchange for granting the Utility Companies the right to use public roadways to lay utility lines, required the Utility Companies to compensate AFC, Rosewood and the Related Companies for this work. The Utility Companies employed representatives whose duties included negotiating, on behalf of the Utility Companies and at a

price favorable to the Utility Companies, the amounts that the Utility Companies paid to AFC, Rosewood and the Related Companies for relocating these utility lines.  The defendant ALEXANDER URBAN acted as such a representative for Con Edison.

V.   The Bribery of Representatives of the Public Utility Companies

12.   The defendants ANDREW CATAPANO and JOHN MIKUSZEWSKI, together with others, paid bribes to representatives of the Utility Companies, including the defendant ALEXANDER URBAN, as a representative of Con Edison, to induce the representatives of the Utility Companies to approve the payment of invoices that were inflated ("inflated invoices") and presented to the Utility Companies by AFC, Rosewood and the Related Companies in connection with public works contracts they performed for NYC.  Specifically, in exchange for the bribes, the representatives, including URBAN, agreed to cause the Utility Companies to pay the inflated invoices, and to thus cause the Utility Companies to pay AFC, Rosewood and the Related Companies more money than they were entitled to receive for moving property of the Utility Companies pursuant to the contracts ("Proceeds from Bribing Representatives of Utility Companies").

## VI.  NYC's Minority Business Enterprise Program

13.  In 1993, NYC established a Minority Business
Enterprise ("MBE") program.  Under the MBE program, certain
minority owned businesses could become certified as MBEs.  The
program required any prime contractor who performed a
construction contract for NYC to make a good faith effort to
subcontract a certain specified percentage of the value of the
contract to one or more certified MBEs.  See 11 N.Y.C.R.R. §§ 3-
03, 3-08(a), 3-17(e) and 3-18(a)(1).

14.  The percentage of the value of the contract to be
set aside for certified MBEs was commonly called the contractor's
MBE goal.  Under the MBE program, construction companies were
permitted to count towards the attainment of their MBE goals only
funds paid to MBE subcontractors that performed "a commercially
useful function" in the execution of the contract.  See 11
N.Y.C.R.R. § 3-04(a)(6).

15.  Under the MBE program, an MBE subcontractor
performed a commercially useful function if it performed real and
actual services that constituted a distinct and verifiable
element of the work called for in the prime contract.  The
determination of whether the subcontractor performed such a
function was required to be based upon consideration of a number
of factors.  Any portion of the value of the prime contract that

the MBE subcontracted back to the prime contractor or an affiliate of the prime contractor did not constitute a commercially useful function and did not count towards the prime contractor's achievement of its MBE goals.  See 11 N.Y.C.R.R. § 3-02.

16.  If a prime contractor was unable to achieve its MBE goals under a contract, then it was required to apply for a post-award waiver of some or all of its MBE goals on the ground that it had made all reasonable efforts to comply with those goals.  If a prime contractor did not comply with its MBE goals and did not apply for and receive a waiver of its unachieved MBE goals, then NYC could declare the prime contract null and void. See 11 N.Y.C.R.R. §§ 3-18(b)(1) and 3-21(g)(1).

17.  The MBE program expired on June 30, 1998, but the program requirements continued to apply to any construction contract for which NYC had solicited bids on or before June 30, 1998.  See 11 N.Y.C.R.R. § 3-28.

VII.  The MBE Fraud

18.  A number of the public works contracts that NYC entered into with AFC, Rosewood and the Related Companies were subject to NYC's MBE program (the "MBE Contracts").  AFC, Rosewood and the Related Companies were not MBEs themselves.  On many of the MBE contracts, AFC, Rosewood and the Related

Companies represented to NYC that they were satisfying some or all of their MBE goals by subcontracting work to V.V.S.S. Company, Inc. ("VVSS"), a certified MBE whose headquarters were located at 32-17 College Point Boulevard, Flushing, New York.

19.   Even though AFC, Rosewood and the Related Companies represented to NYC that they had subcontracted work on the MBE Contracts to VVSS, VVSS did not perform a commercially useful function on any of those subcontracts, as that term was used in the NYC MBE regulations.  The defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO, together with others, transferred employees and supervisors of AFC, Rosewood and the Related Companies to the VVSS payroll and ordered supplies and materials through VVSS in order to deceive NYC into believing that VVSS was actively performing subcontract work on the MBE Contracts.  In fact, as MIKUSZEWSKI and RUGGIERO well knew and believed, the subcontract work was actually performed, managed and supervised by AFC, Rosewood and the Related Companies.  VVSS, in effect, subcontracted these subcontracts in their entirety back to AFC, Rosewood and the Related Companies.

20.   NYC made payments to AFC, Rosewood and the Related Companies on many of the MBE Contracts, and did not declare these contracts null and void because it relied upon the false representations of AFC, Rosewood and the Related Companies that

they had satisfied their MBE goals through the subcontracts with VVSS.  NYC's payments on the MBE Contracts constituted the proceeds of the fraud that the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO, together with others, committed against NYC in connection with the MBE program ("Proceeds of the MBE Fraud").

VIII.   The Money Laundering Scheme

21.   The Savings from Bribing Business Agents of Locals 14 and 15 and the Proceeds from Bribing Representatives of Utility Companies, which collectively constituted the proceeds of the bribes paid by the defendants ANDREW CATAPANO and JOHN MIKUSZEWSKI, and the Proceeds of the MBE Fraud committed by MIKUSZEWSKI and the defendant JOHN RUGGIERO caused certain bank accounts of AFC, Rosewood and the Related Companies to have higher balances than they would have had in the absence of the bribes and the MBE Fraud (the "Inflated Bank Accounts").

22.   The defendants ANDREW CATAPANO and JOHN MIKUSZEWSKI, together with others, obtained the money that they paid as bribes to business agents of Locals 14 and 15 and representatives of the Utility Companies (the "Bribe Money") from the Inflated Bank Accounts, which contained the proceeds of prior bribes they paid to Locals 14 and 15 and representatives of the Utility Companies.  CATAPANO and MIKUSZEWSKI, together with others, transferred the Bribe Money from the Inflated Bank

Accounts to business agents of Locals 14 and 15 and
representatives of Utility Companies by engaging in a series of
financial transactions that were intended to conceal and
disguise that the defendants were paying the bribes and that the
source of the bribes was the Savings from Bribing Business
Agents of Locals 14 and 15 and the Proceeds from Bribing
Representatives of Utility Companies that were contained in the
Inflated Bank Accounts.

     23.   The defendants JOHN MIKUSZEWSKI and JOHN
RUGGIERO, together with others, transferred funds from the
Inflated Bank Accounts, which contained proceeds from prior acts
of MBE fraud against NYC, to VVSS bank accounts.   VVSS used
these funds to pay the employees that AFC, Rosewood and the
Related Companies transferred to VVSS to perform the subcontract
work and to pay related expenses under the subcontracts.   These
transfers of funds were designed to make it appear that VVSS was
performing services under the subcontracts, but in fact, as
MIKUSZEWSKI and RUGGIERO well knew and believed, VVSS was not
doing so.   MIKUSZEWSKI, RUGGIERO and others transferred these
funds with the intent to promote new frauds against NYC in
connection with the MBE Contracts.

IX.  The Scheme to Defraud the Internal Revenue Service and
     to File False Tax Returns

     24.  In or about and between January 1999 and July
2000, the defendant JOHN MIKUSZEWSKI received a series of
payments from JPM through Alpert Contracting, which MIKUSZEWSKI
used to pay the bribes to the business agents of Locals 14 and
15 that are described in paragraph ten above.  In order to
conceal from the government and others the purpose of the
payments that JPM made to him, MIKUSZEWSKI caused Alpert
Contracting to prepare and submit to JPM invoices falsely
indicating that the payments were fees for consulting services
that Alpert Contracting provided to JPM, when in fact, as
MIKUSZEWSKI and others well knew and believed, the payments were
not for consulting services.

     25.  In addition, during the years 1998, 1999 and
2000, the defendant JOHN MIKUSZEWSKI, as an employee of Alpert
Contracting, provided professional engineering services to AFC,
Rosewood and the Related Companies on NYC public works
contracts.  Mikuszewski caused large amounts of the fees that
AFC, Rosewood and the Related Companies paid to Alpert
Contracting for these services to falsely be recorded on Alpert
Contracting's books and records as loans from him to Alpert
Contracting, when, as MIKUSZEWSKI well knew and believed, these

fees were income to Alpert Contracting rather than loans.  Since

Alpert Contracting was a Subchapter S Corporation, as defined by

the Internal Revenue Code ("S Corporation"), MIKUSZEWSKI, with

the use of the false books and records, caused the United States

Income Tax Returns of Alpert Contracting, himself and Jane Doe

for the years 1998, 1999 and 2000 to materially understate the

gross receipts and income of each of these taxpayers.

<u>COUNT ONE</u>
(Conspiracy to Make Unlawful Labor Payments and Commit Mail
Fraud)

26.  The allegations contained in paragraphs one

through twenty-five of this Superseding Indictment are realleged

and incorporated as if fully set forth in this paragraph.

27.  In or about and between January 1990 and December

2001, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants

ANDREW CATAPANO and JOHN MIKUSZEWSKI, being employers and

persons acting in the interest of employers, to wit: AFC,

Rosewood and the Related Companies, and the defendant ALEXANDER

URBAN, together with others, did knowingly and willfully

conspire: (a) to willfully pay, lend and deliver and agree to

pay, lend and deliver money and things of value, to wit: United

States currency, in an amount in excess of $1,000, to officers

and employees of labor organizations, to wit: business agents of

Local 14 and Local 15, which labor organizations represented, sought to represent and would admit to membership employees of such employers who were employed in an industry affecting interstate commerce, to wit: the New York State construction industry, in violation of Title 29, United States Code, Sections 186(a)(2) and 186(d)(2); (b) to devise a scheme and artifice to defraud Local 14 and Local 15 members and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause mail matter to be delivered by the United States Postal Service and a private and commercial interstate carrier, to wit: Federal Express, in violation of Title 18, United States Code, Section 1341; (c) to devise a scheme and artifice to defraud Local 14, Local 15 and their members by depriving them of the intangible right to the honest services of their employees, officers and business agents, and for the purpose of executing such scheme and artifice, to cause mail matter to be delivered by the United States Postal Service and a private and commercial interstate carrier, to wit: Federal Express, in violation of Title 18, United States Code, Sections 1341 and 1346; (d) to devise a scheme and artifice to defraud the Utility Companies, including Con Edison, and to obtain money and property from them by means

15

of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause mail matter to be delivered by the United States Postal Service and a private and commercial interstate carrier, to wit: Federal Express, in violation of Title 18, United States Code, Section 1341; and (e) to devise a scheme and artifice to defraud the Utility Companies, including Con Edison, by depriving them of the intangible right to the honest services of their employees and representatives, and for the purpose of executing such scheme and artifice, to cause mail matter to be delivered by the United States Postal Service and a private and commercial interstate carrier, to wit: Federal Express, in violation of Title 18, United States Code, Sections 1341 and 1346.

28. In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants ANDREW CATAPANO, JOHN MIKUSZEWSKI, and ALEXANDER URBAN, together with others, committed and caused the commission of, among others, the following:

OVERT ACTS

a. On or about June 15, 1999, in Queens, New York, the defendant JOHN MIKUSZEWSKI and others caused to be issued a check bearing number 103052 drawn on the corporate checking

16

account of JPM and made payable to Alpert Contracting in the amount of $8,475.00.

b.  On or about July 29, 1999, in Queens, New York, MIKUSZEWSKI and others caused to be issued a check bearing number 103204 drawn on the corporate checking account of JPM and made payable to Alpert Contracting in the amount of $9,300.00.

c.  On or about September 16, 1999, in Queens, New York, the defendant JOHN MIKUSZEWSKI and others caused to be issued a check bearing number 103483 drawn on the corporate checking account of JPM and made payable to Alpert Contracting in the amount of $6,450.00.

d.  On or about January 1, 2000, in Queens, New York, a business agent of Local 14 had a conversation with the defendant JOHN MIKUSZEWSKI about making unlawful labor payments.

c.  On or about April 3, 2000, in Queens, New York, the defendant ANDREW CATAPANO and others caused to be issued six invoices from JPM to Con Edison in the amounts of $43,443.00, $36,169.00, $42,371.00, $20,259.00, $49,998.00 and $18,196.00, respectively.

f.  On or about May 3, 2000, in New York, New York, the defendant ANDREW CATAPANO and others caused to be issued a check drawn on the bank account of Con Edison and made payable to JPM in the amount of $210,439.58.

17

g.   On or about May 24, 2000, in Queens, New York, the defendant ANDREW CATAPANO and others caused to be issued an invoice from JPM to Con Edison in the amount of $49,950.52.

h.   In or about June 2000, in Queens, New York, the defendant JOHN MIKUSZEWSKI paid approximately $8,000 in cash to business agents of Locals 14 and 15.

i.   On or about June 23, 2000, in New York, New York, the defendant ANDREW CATAPANO and others caused to be issued a check bearing number 312226 drawn on the bank account of Con Edison and made payable to JPM in the amount of $49,950.52.

j.   On or about July 14, 2000, in Queens, New York, the defendant ANDREW CATAPANO and others caused to be issued three invoices from JPM to Con Edison in the amounts of $55,789.70, $57,938.98 and $45,946.92, respectively.

k.   On or about August 11, 2000, in New York, New York, the defendant ANDREW CATAPANO and others caused to be issued a check drawn on the bank account of Con Edison and made payable to JPM in the amount of $159,675.60.

l.   On or about August 18, 2000, in Queens, New York, the defendant ANDREW CATAPANO and others caused to be issued an invoice from JPM to Con Edison in the amount of $18,816.02.

m.   On or about September 15, 2000, in New York, New York, the defendant ANDREW CATAPANO and others caused to be

issued a check drawn on the bank account of Con Edison and made payable to JPM in the amount of $18,816.02.

n.   On or about August 15, 2001, in Queens, New York, the defendant JOHN MIKUSZEWSKI caused to be issued and cashed a check bearing number 5221 drawn on the corporate checking account of Alpert Contracting and made payable to MIKUSZEWSKI in the amount of $5,000.00.

o.   In or about December 2000, in Queens, New York, the defendant JOHN MIKUSZEWSKI paid money to business agents of Locals 14 and 15.

p.   In or about December 2001, in Queens, New York, the defendant JOHN MIKUSZEWSKI paid money to business agents of Locals 14 and 15.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### COUNT TWO
(Conspiracy to Commit Mail Fraud)

29.   The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

30.   In or about and between January 1993 and June 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO, together with others, did

knowingly and willfully conspire to devise a scheme and artifice to defraud NYC and to obtain money and property from it by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause mail matter to be delivered by the United States Postal Service and a private and commercial interstate carrier, to wit: Federal Express, in violation of Title 18, United States Code, Section 1341.

31.   In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO, together with others, committed and caused the commission of, among others, the following:

OVERT ACTS

a.   On or about May 22, 1996, in Glendale, New York, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused to be issued a check bearing number 18675, drawn on the corporate checking account of AFC and made payable to the order of VVSS in the amount of $4,314.94.

b.   On or about August 21, 1998, in Glendale, New York, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused a Rosewood employee to sign a Request for Approval of Subcontractor form indicating that VVSS would perform sheeting,

backfill and restoration work on a NYC contract known as the Emergency Force Mains Project.

      c. On or about June 2, 1999, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused to be mailed to the offices of Rosewood in Glendale, New York, a check bearing number 99022003, drawn on the account of the Office of the Comptroller for the City of New York and made payable to the order of Rosewood in the amount of $66,762.22.

      d. On or about June 30, 1999, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused an employee of JPM, in Queens, New York, to sign a Request for Approval of Subcontractor form indicating that VVSS would perform the concrete and asphalt work on a NYC contract known as the Gipson Street Project.

      e. On or about July 26, 1999, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused to be mailed to the offices of Rosewood in Glendale, New York, a check bearing number 0150200223, drawn on the account of the Office of the Comptroller for the City of New York and made payable to the order of Rosewood in the amount of $123,897.61.

      f. On or about September 9, 1999, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused the NYC Department of Design and Construction in Long Island City, New York, to mail

to JPM a memorandum approving VVSS as the MBE subcontractor on the Gipson Street Project.

      g.  On or about September 22, 1999, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused to be mailed to the offices of Rosewood in Glendale, New York, a check bearing number 0150317079, drawn on the account of the Office of the Comptroller for the City of New York and made payable to the order of Rosewood in the amount of $48,578.22.

      h.  On or about November 24, 1999, in Queens, New York, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused to be issued a check bearing number 103947, drawn on the corporate checking account of JPM and made payable to VVSS in the amount of $19,909.68.

      i.  In or about January 2001, in Glendale, New York, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused Rosewood to mail a Request for Payment on a NYC public works contract known as the Woodhaven Boulevard Project to the NYC Department of Design and Construction.

      j.  On or about May 23, 2002, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO caused a NYC agency to mail to Rosewood in Glendale, New York, a letter requesting proof that final payment had been made to Rosewood's MBE subcontractor, VVSS, on the Emergency Force Mains Project.

22

(Title 18, United States Code, Sections 371 and 3551
et seq.)

## COUNT THREE
(Unlawful Labor Payments)

32.  The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

33.  In or about and between January 1990 and December 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CATAPANO and JOHN MIKUSZEWSKI, together with others, being employers and persons acting in the interest of employers, to wit: AFC, Rosewood and the Related Companies, did knowingly and willfully pay, lend and deliver and agree to pay, lend and deliver money and things of value, to wit: United States currency, in an amount in excess of $1,000, to officers and employees of labor organizations, to wit: business agents of Local 14 and Local 15, which labor organizations represented, sought to represent and would admit to membership employees of such employers who were employed in an industry affecting interstate commerce, to wit: the New York State construction industry.

(Title 29, United States Code, Sections 186(a)(2) and 186(d)(2); Title 18, United States Code, Sections 2 and 3551 <u>et seq.</u>)

## COUNTS FOUR THROUGH TWENTY-ONE
(Mail Fraud)

34.   The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

35.   In or about and between January 1990 and December 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CATAPANO and JOHN MIKUSZEWSKI, together with others, did knowingly and intentionally devise a scheme and artifice (a) to defraud Local 14 and Local 15 members and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and (b) to defraud Local 14, Local 15 and their members by depriving them of the intangible right to the honest services of their employees, officers and business agents.

36.   For the purpose of executing the scheme and artifice and attempting to do so, on or about the dates set forth below, the defendants ANDREW CATAPANO and JOHN MIKUSZEWSKI, together with others, placed and caused to be placed in authorized depositories for mail matter, to be

delivered by the United States Postal Service according to the directions thereon, and deposited and caused to be deposited, to be sent and delivered by a private and commercial carrier, to wit: Federal Express, and caused to be taken and received therefrom, the mail matter indicated below:

| COUNT | APPROXIMATE DATE OF MAILING | DOCUMENT | SENDER | RECIPIENT |
|-------|------------------------------|----------|--------|-----------|
| Four  | April 2000 | Monthly Employer Remit-tance Identi-fication Report Form ("MERF") | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Five  | May 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Six   | June 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Seven | July 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Eight | August 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |



| COUNT | APPROXIMATE DATE OF MAILING | DOCUMENT | SENDER | RECIPIENT |
|---|---|---|---|---|
| Nine | September 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Ten | October 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Eleven | November 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Twelve | December 2000 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Thirteen | January 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Fourteen | February 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Fifteen | March 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Sixteen | April 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Seventeen | May 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Eighteen | June 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Nineteen | July 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |
| Twenty | August 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |

| COUNT | APPROXIMATE DATE OF MAILING | DOCUMENT | SENDER | RECIPIENT |
|---|---|---|---|---|
| Twenty-One | September 2001 | MERF | JPM Queens, N.Y. | Local 14 Welfare Fund |

(Title 18, United States Code, Sections 1341, 1346, 2 and 3551 et seq.)

## COUNTS TWENTY-TWO THROUGH TWENTY-NINE
(Mail Fraud)

37.  The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

38.  In or about and between January 1990 and December 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CATAPANO, JOHN MIKUSZEWSKI and ALEXANDER URBAN, together with others, did knowingly and intentionally devise a scheme and artifice (a) to defraud the Utility Companies, including Con Edison, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and (b) to defraud the Utility Companies, including Con Edison, by depriving them of the intangible right to the honest services of their employees and representatives.

39.  For the purpose of executing the scheme and artifice and attempting to do so, on or about the dates set forth below, the defendants ANDREW CATAPANO, JOHN MIKUSZEWSKI and ALEXANDER URBAN, together with others, placed and caused to be placed in authorized depositories for mail matter, to be delivered by the United States Postal Service according to the directions thereon, and deposited and caused to be deposited, to be sent and delivered by a private and commercial carrier, to wit: Federal Express, and caused to be taken and received therefrom, the mail matter indicated below:

| COUNT | APPROXIMATE DATE OF MAILING | DOCUMENT | SENDER | RECIPIENT |
|-------|-----------------------------|----------|--------|-----------|
| Twenty-Two | April 3, 2000 | Invoice | JPM Queens, N.Y. | Con Edison |
| Twenty-Three | May 3, 2000 | Check | Con Edison | JPM Queens, N.Y. |
| Twenty-Four | May 24, 2000 | Invoice | JPM Queens, N.Y. | Con Edison |
| Twenty-Five | June 23, 2000 | Check | Con Edison | JPM Queens, N.Y. |
| Twenty-Six | July 14, 2000 | Invoice | JPM Queens, N.Y. | Con Edison |
| Twenty-Seven | August 11, 2000 | Check | Con Edison | JPM Queens, N.Y. |

| COUNT | APPROXIMATE DATE OF MAILING | DOCUMENT | SENDER | RECIPIENT |
|-------|------------------|----------|--------|-----------|
| Twenty-Eight | August 18, 2000 | Invoice | JPM Queens, N.Y. | Con Edison |
| Twenty-Nine | September 15, 2000 | Check | Con Edison | JPM Queens, N.Y. |

(Title 18, United States Code, Sections 1341, 1346, 2 and 3551 et seq.)

## COUNTS THIRTY AND THIRTY-ONE
(Mail Fraud)

40.  The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

41.  In or about and between January 1993 and June 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud NYC and to obtain money and property from it by means of materially false and fraudulent pretenses, representations and promises.

42.  For the purpose of executing the scheme and artifice and attempting to do so, on or about the dates set forth below, the defendants JOHN MIKUSZEWSKI and JOHN RUGGIERO, together with others, placed and caused to be placed in authorized depositories for mail matter, to be delivered by the

United States Postal Service according to the directions thereon, and deposited and caused to be deposited, to be sent and delivered by a private and commercial carrier, to wit: Federal Express, and caused to be taken and received therefrom, the mail matter indicated below:

| COUNT | APPROXIMATE DATE OF MAILING | DOCUMENT | SENDER | RECIPIENT |
|---|---|---|---|---|
| Thirty | January 2001 | Request for Payment | Rosewood Queens, N.Y. | NYC Department of Design and Con struction |
| Thirt y-One | May 2002 | Letter Request-ing Proof of Payment | NYC Depart-ment of Environ-mental Protection | Rosewood Queens, N.Y. |

(Title 18, United States Code, Sections 1341, 1346, 2 and 3551 et seq.)

## COUNT THIRTY-TWO
(Conspiracy To Launder Money)

43.   The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

44.   In or about and between January 1990 and December 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CATAPANO, JOHN MIKUSZEWSKI and JOHN RUGGIERO, together with

others, did knowingly and intentionally conspire to conduct
financial transactions affecting interstate commerce, to wit:
transactions in United States currency and negotiations of
checks, which in fact involved the proceeds of specified unlawful
activity, to wit: unlawful labor payments, in violation of Title
29, United States Code, Sections 186(a)(2) and 186(d)(2), and
mail fraud, in violation of Title 18, United States Code,
Sections 1341 and 1346, knowing that the property involved in the
financial transactions represented proceeds of some form of
unlawful activity (a) with the intent to promote the carrying on
of  specified unlawful activity, to wit: unlawful labor payments,
in violation of Title 18, United States Code, Sections 186(a)(2)
and 186(d)(2), and mail fraud, in violation of Title 18, United
States Code, Sections 1341 and 1346, all in violation of Title
18, United States Code, Section 1956(a)(1)(A)(i); and (b) knowing
that the transactions were designed in whole and in part to
conceal and disguise the nature, the location, the source, the
ownership and the control of the proceeds of such specified
unlawful activity, in violation of Title 18, United States Code,
Section 1956(a)(1)(B)(i).

        (Title 18, United States Code, Sections 1956(h) and
3551 et seq.)

## COUNT THIRTY-THREE
(Conspiracy to Defraud the United States)

45.   The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

46.   In or about and between January 1999 and July 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN MIKUSZEWSKI, together with others, did knowingly and willfully conspire to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service ("IRS"), an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, to wit: income taxes.

47.   In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendant JOHN MIKUSZEWSKI, together with others, committed and caused the commission of, among others, the following:

### OVERT ACTS

a.   On or about February 17, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $3,358.50.

32

b.   On or about March 1, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $6,237.00.

c.   On or about March 8, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 102466 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $9,595.50.

d.   On or about March 31, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $4,588.00.

e.   On or about April 7, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 102659 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $4,588.00.

f.   On or about April 16, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $2,294.00.

g.   On or about April 22, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 102767 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $2,294.00.

h.  On or about April 30, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $11,851.88.

i.  On or about May 12, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 102877 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $11,851.88.

j.  On or about June 1, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $8,475.00.

k.  On or about June 15, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 103052 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $8,475.00.

l.  On or about July 6, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $9,300.00.

m.  On or about July 29, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 103204 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $9,300.00.

n.  On or about August 9, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $5,925.00.

o.  On or about September 1, 1999, the defendant JOHN MIKUSZEWSKI caused to be prepared and submitted to JPM an Alpert Contracting invoice in the amount of $6,450.00.

p.  On or about September 2, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 103475 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $5,925.00.

q.  On or about September 16, 1999, the defendant JOHN MIKUSZEWSKI caused JPM to prepare a check bearing number 103483 drawn on its corporate checking account and payable to Alpert Contracting in the amount of $6,450.00.

r.  On or about July 17, 2000, the defendant JOIN MIKUSZEWSKI caused JPM to file with the IRS a United States Income Tax Return for an S Corporation, IRS Form 1120S, for tax year 1999, which return contained a false statement regarding the amount and nature of JPM's business expenses.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNTS THIRTY-FOUR THROUGH THIRTY-SIX
(False Tax Filings)

48. The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

49. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JOHN MIKUSZEWSKI did knowingly and willfully make and subscribe a United States Income Tax Return for an S Corporation, IRS Form 1120S, for Alpert Contracting for each of the calendar years set forth below, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service Center, Holtsville, New York, and which MIKUSZEWSKI did not believe to be true and correct as to every material matter, in that each of the tax returns referred to below falsely underreported Alpert Contracting's Other Income on line 5 of the return by the amounts listed below:

| COUNT | FILING DATE | CALENDAR YEAR | UNDERREPORTED AMOUNT |
|-------|-------------|---------------|----------------------|
| 34 | June 23, 1999 | 1998 | $100,000 |
| 35 | March 16, 2000 | 1999 | $150,000 |

| COUNT | FILING DATE | CALENDAR YEAR | UNDERREPORTED AMOUNT |
|-------|-------------|---------------|----------------------|
| 36 | March 15, 2001 | 2000 | $150,000 |

(Title 26, United States Code, Section 7206(1); Title 18, United States Code, Sections 3551 et seq.)

## COUNTS THIRTY-SEVEN THROUGH THIRTY-NINE
(False Tax Filings)

50.   The allegations contained in paragraphs one through twenty-five of this Superseding Indictment are realleged and incorporated as if fully set forth in this paragraph.

51.   On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JOHN MIKUSZEWSKI did knowingly and willfully make and subscribe a United States Individual Income Tax Return, IRS Form 1040, for each of the calendar years set forth below, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service Center, Holtsville, New York, and which MIKUSZWESKI did not believe to be true and correct as to every material matter, in that each of the tax returns referred to below falsely underreported on line 31 of Schedule E, Part II, the income that MIKUSZEWSKI received as a 49% owner of Alpert Contracting, by the amounts listed below:

| COUNT | FILING DATE | CALENDAR YEAR | UNDERREPORTED AMOUNT |
|-------|-------------|---------------|----------------------|
| 37 | April 15, 1999 | 1998 | $49,000 |
| 38 | April 15, 2000 | 1999 | $73,500 |
| 39 | April 15, 2001 | 2000 | $73,500 |

(Title 26, United States Code, Section 7206(1); Title
18, United States Code, Sections 3551 et seq.)

### COUNTS FORTY THROUGH FORTY-TWO
(Aiding and Abetting False Tax Filings)

52.   The allegations contained in paragraphs one
through twenty-five of this Superseding Indictment are realleged
and incorporated as if fully set forth in this paragraph.

53.   On or about the dates set forth below, within the
Eastern District of New York and elsewhere, the defendant JOHN
MIKUSZEWSKI did knowingly and willfully aid and assist in, and
procure, counsel, and advise the preparation and presentation
under, and in connection with a matter arising under the Internal
Revenue laws, of returns, claims and other documents, to wit:
United States Individual Income Tax Returns, Forms 1040, of Jane
Doe for the calendar years set forth below, which tax returns
were false and fraudulent as to material matters, in that each of
the tax returns referred to below falsely underreported on line
31 of Schedule E, Part II, the income Jane Doe received as a 51%

percent owner of Alpert Contracting, by the amounts listed below:

| COUNT | FILING DATE | CALENDAR YEAR | UNDERREPORTED AMOUNT |
|-------|-------------|---------------|----------------------|
| 40 | April 15, 1999 | 1998 | $51,000 |
| 41 | April 15, 2000 | 1999 | $76,500 |
| 42 | April 15, 2001 | 2000 | $76,500 |

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Sections 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
(Counts One through Thirty-One)

54.  The United States hereby gives notice to the defendants charged in Counts One through Thirty-One that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to the following:

### Money Judgment

A sum of money equal to ten million dollars in United States currency ($10,000,000) for which the defendants are jointly and severally liable.

55. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

<u>CRIMINAL FORFEITURE ALLEGATION</u>
(Count Thirty-Two)

56. The United States hereby gives notice to the defendants charged in Count Thirty-Two that, upon their

conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982, of all property involved in each offense of conviction in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, and all property traceable to such property as a result of the defendants' conviction of Count Thirty-Two, including but not limited to, the following:

Money Judgment

A sum of money equal to ten million dollars in United States currency ($10,000,000) for which the defendants are jointly and severally liable.

57. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

41

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982)

A TRUE BILL

FOREPERSON

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM JDBD-34
JUN. &

No. _____

# UNITED STATES DISTRICT COURT

EASTERN ____ District of __ NEW YORK __

____ Criminal _____ Division

## THE UNITED STATES OF AMERICA

*vs.*

ANDREW CATAPANO, JOHN MIKUSZEWSKI,

JOHN RUGGIERO and ALEXANDER URBAN,
Defendants.

## S U P E R S E D I N G
## INDICTMENT

Cr. No. ____
(T. 18, U.S.C., §§ 371, 981(a) (1)
(C), 982, 1341, 1346, 1956(h) and
3551 et seq.; T. 21, U.S.C., §§ 2 and
T. 26, U.S.C., §§ 7206(1) and 7205(2);
T. 28, U.S.C., § 7206(1) and 7205(2);
§§ 186(a)(2) and 186(d)(2); T. 29, U.S.C.,
853(p);

A true bill.

_____
                    Foreman

Filed in open court this _____

_____ day,

of _____ A.D. 19 ____

_____
                    Clerk

Bail, $ ____

Charles Kleinberg, A.U.S.A.
(718) 254-6012